UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CARY J. PICKETT,<br><br>    Plaintiff<br><br>v.<br><br>VALDEZ, et. al.,<br><br>    Defendants | Case No.: 3:17-cv-00567-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 96 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Summary Judgment. (ECF No. 96.) Defendant Valdez filed a response. (ECF No. 99.) Plaintiff filed a reply. (ECF No. 100.)

After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Second Amended Complaint (SAC), ECF No. 54.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC). (*Id.*) Defendants are Paul Valdez and NDOC Director Charles Daniels.[1]

---

[1] The court granted Plaintiff leave to file the SAC to add then NDOC Director James Dzurenda as a defendant in his official capacity. (ECF No. 53.) Under Federal Rule of Civil Procedure 25(d), the successor is automatically substituted for a public officer who is a party in his or her official capacity who no longer holds office while the action is pending. Therefore, current NDOC Director Charles Daniels is automatically substituted in Dzurenda's place. The court also

In the SAC, Plaintiff alleges that Valdez retaliated against Plaintiff. Specifically, Plaintiff contends that on August 6, 2016, he was served two hard boiled eggs that were contaminated with dried blood or fluids from red meat, that were placed on top of the other foods on his tray. Plaintiff requested a new tray from the culinary officer, but his request was denied. When Plaintiff saw Valdez working, Plaintiff explained to Valdez what happened, and asked if it would be okay if he took the contaminated eggs from the chow hall to "attach" them to an emergency grievance. Valdez told Plaintiff to "go ahead and try it" but shift command would probably laugh at him. Plaintiff took the eggs to his unit officer, Willis, and got an emergency grievance, and asked Willis to submit the grievance and the contaminated eggs to shift command. Plaintiff alleges that Willis apparently called Valdez to transport the emergency grievance to shift command. Valdez read Plaintiff's grievance and noticed Plaintiff had included in the grievance that Valdez had given Plaintiff permission to remove the eggs from the chow hall.

At that point, Plaintiff claims that Valdez came to his cell door and demanded that Plaintiff re-write his grievance and take Valdez's name out of it. Valdez slid a blank emergency grievance under the door. Plaintiff refused, and Valdez threatened to write Plaintiff up for compromising staff. Two days later, Plaintiff learned Valdez had filed a charge alleging Plaintiff had given false information in his grievance and maintained he did not allow Plaintiff to remove the food from the chow hall.

Plaintiff claims that Valdez submitted the charge in retaliation because Plaintiff had refused to remove his assertion that Valdez had permitted him to take the food out of the chow hall from his grievance.

---

notes that the response to Plaintiff's motion is filed on behalf of Paul Valdez and Harold Wickham, even though Harold Wickham is not a defendant in this case. The defendants are Paul Valdez and Charles Daniels.

1  Plaintiff's claim against Director Daniels is based on a lack of training, and he named
2  Director Daniels to implement any injunctive relief that may be ordered.
3  Plaintiff moves for summary judgment on the retaliation claim. Defendants argue that
4  disputes as to material facts preclude the court from entering summary judgment in the favor of
5  Plaintiff.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re*

*Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)

(quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of the following elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a right of meaningful access to the courts." *Id*. (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)). Prisoners have a fundamental First Amendment right to file prison grievances and pursue civil rights litigation. *Rhodes*, 408 F.3d at 567 (citation omitted); *Entler v. Gregoire,* 872 F.3d 1031, 1039 (9th Cir 2017) (quoting *Rhodes*, 408 F.3d at 567).

An inmate must submit evidence, direct or circumstantial, to establish a link between the exercise of constitutional rights and the alleged retaliatory action. *Pratt*, 65 F.3d at 806-07. "[A] plaintiff must show that his protected conduct was the 'substantial' or 'motivating' factor behind

the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (citation and quotation marks omitted). The plaintiff "need only put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent[.]" *Id*. (quotation marks and citation omitted). Circumstantial evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse … action were false and pretextual." *Id*. (citation and quotation marks omitted). A plaintiff's mere speculation that there is a causal connection is insufficient to raise a genuine issue of material fact. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citations omitted) (affirming grant of summary judgment where there was no evidence that the defendants knew about plaintiff's prior lawsuit, or that defendants' disparaging remarks were made in reference to the prior lawsuit).

"[A] plaintiff does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (citation and quotation marks omitted).

Plaintiff states in his declaration that on August 6, 2016, he received boiled eggs that had been contaminated with dried blood and were sitting on top of other food items on his breakfast tray, and he was denied a replacement tray by the culinary officer. Plaintiff then sat down at a table with inmate Clarence Cameron, when Valdez entered the chow hall. Plaintiff waved Valdez over to the table, and asked if he could speak with Valdez to show him the contaminated egg and ask permission to remove the egg from the chow hall to attach to an emergency grievance. He believed he needed permission to remove the egg because removing food from a tray could result

1  in a notice of charges within NDOC. Valdez told Plaintiff to go ahead, but that his supervisor
2  would probably just laugh at Plaintiff. Plaintiff submitted the emergency grievance to his unit
3  officer, Willis, with the eggs. About 30 minutes later, Valdez came to Plaintiff's cell door
4  banging and yelling loudly, and demanded that Plaintiff re-write his grievance and take Valdez's
5  name out of it, and threatened to tear Plaintiff's cell up or write Plaintiff up for attempting to
6  compromise staff. Plaintiff subsequently received a notice of charges for lying to staff. Plaintiff
7  maintains he did not commit that offense. (Pl. Decl., ECF No. 96 at 10-12.)
8      The disciplinary hearing form reflects that Plaintiff was charged and entered a plea of not
9  guilty for giving false information. (ECF No. 96 at 14.) Plaintiff said that his food was cross-
10 contaminated and he tried to ask Valdez if he could attach it to the grievance. (*Id.*) The
11 disciplinary hearing form indicates that Cameron was called as a witness and said that Valdez
12 told Plaintiff to "do what he wanted to do." (*Id.*)
13     Plaintiff sent written questions to Cameron, which were answered under oath. Cameron
14 was present in the chow hall on August 5, 2016, when Plaintiff's tray contained what he believed
15 were contaminated boiled eggs. Cameron was sitting at the same table as Plaintiff when Plaintiff
16 spoke to Valdez about the eggs, and asked Valdez for his permission to remove the eggs from the
17 chow hall to attach to an emergency grievance, but Cameron could not say what Valdez's
18 response was. Cameron was housed in the same unit and wing at this time, four to five doors
19 away from Plaintiff's cell. Cameron heard Valdez go to Plaintiff's cell, and tell Plaintiff he was
20 going to search his cell for Plaintiff writing him up for searching Plaintiff's room for no reason.
21 (ECF No. 96 at 16-18.) Plaintiff acknowledges that Cameron could not recall Valdez's response
22 when he responded to these questions, but points out that Cameron previously testified at the
23 disciplinary hearing that Valdez told Plaintiff he could do what he wanted.

In his first level grievance, Plaintiff said that Cameron told Sergeant Lewis (the hearing officer) that Valdez told Plaintiff he could "do what he wanted to do" when he asked Valdez for permission to take the contaminated eggs to attach to his emergency grievance. Plaintiff reported to his unit officer, Willis, with the contaminated egg. Willis contacted search and escort to obtain an emergency grievance. Plaintiff also said that Valdez came to his cell and told Plaintiff to re-write his grievance and take Valdez's name out of it, and Plaintiff refused, and Valdez threatened retaliation by means of a notice of charges. (ECF No. 96 at 20-23.)

Plaintiff points out that in discovery Valdez maintained he did not have an interaction with Plaintiff (ECF No. 96 at 26, response to interrogatory 9), but Valdez's notice of charges stated that Plaintiff asked to speak to him during the morning feeding on August 6, 2016 (ECF No. 96 at 29).

Plaintiff maintains that the notice of charges by Valdez was retaliatory as the notice of charges was arbitrary and had no legitimate purpose.

In response, Defendants argue that disputes of material facts preclude the court from entering summary judgment in the favor of Plaintiff. They point out that Plaintiff's own motion acknowledges that the court will have to weigh the credibility of the evidence to decide this motion.

Specifically, they contend that there is a dispute as to whether Plaintiff put a false statement in his emergency grievance regarding whether Valdez granted Plaintiff permission to remove the eggs from the culinary. They contend that there was no retaliatory action because Plaintiff was found guilty of the charge; therefore, the notice of charges did serve a legitimate purpose.

Defendants also argue that none of Plaintiff's exhibits are authenticated and so the court may determine not to consider them. Plaintiff's exhibits consist of: his own declaration; Mr. Cameron's responses to written deposition questions; NDOC's disciplinary notice of charges and summary of the disciplinary hearing; Valdez's responses to interrogatories; and Plaintiff's grievance form

Plaintiff need not authenticate his own declaration. Mr. Cameron's responses to written deposition questions were made under oath and presumably were served on Defendants as well. The disciplinary notice of charges and summary of disciplinary hearing are NDOC's own documents, and Defendants provide no indication that these documents are not what they purport to be or that there is any other reason to question their authenticity. Similarly, Defendants do not indicate a basis for believing that Valdez's own responses to interrogatories are not authentic. Finally, Defendants do not assert that there is a basis for believing that Plaintiff's grievance form, which would have been retained by NDOC, is somehow inauthentic. In his declaration, Plaintiff states that he has attached the stamped copy of his first level grievance. Defendants are cautioned that in the future they should only raise an "objection" regarding authenticity if they actually have a basis for believing that a particular exhibit is not what it purports to be or there is a basis for questioning its authenticity.

Defendants also state that Plaintiff's own declaration does not state he is competent to testify and so it may be stricken; however, Defendants point to nothing indicating Plaintiff is not in fact competent to testify. Again, an objection based on competency should have some basis in fact before being raised in response to a motion for summary judgment.

Nevertheless, the court agrees that there is a genuine dispute of material fact that precludes the entry of summary judgment in Plaintiff's favor on the retaliation claim against

Valdez. While Plaintiff claims that Valdez's filing of the notice of charges against him for lying to staff was retaliatory because he did not lie to staff, there is evidence on both sides of this issue and a fact finder could choose to believe either side. For instance, Plaintiff maintains, and Cameron's responses to the written deposition questions support, that Plaintiff asked Valdez for permission to take the eggs out of the chow hall. At the disciplinary hearing, Cameron apparently said that Valdez said Plaintiff could do what he wanted to do with respect to the eggs. In response to the written deposition questions, Cameron said that he could not recall how Valdez responded.

On the other hand, Valdez stated in his report that Plaintiff asked to speak with him that morning, and said that a culinary officer would not exchange the food and Valdez told Plaintiff the culinary officer's word was final. Plaintiff then asked for an emergency grievance and Plaintiff lied, stating that Valdez granted him permission to take food from the culinary to attach to his emergency grievance. Valdez denies that he granted Plaintiff permission to take the food from the culinary and maintains this was a lie, which formed the basis for the notice of charges.

As such, there is a genuine dispute of material fact as to whether Valdez granted Plaintiff permission to take the food out of the culinary, and thus, whether there was a valid basis for the charges, or whether they could have been retaliatory. This fact goes both to Valdez's motivation for filing the notice of charges and whether there was a legitimate penological reason for the adverse action taken against Plaintiff. It is for the trier of fact, and not the court, to determine which version of events to believe.

In light of the court's finding that there is a genuine dispute as to a material fact, Plaintiff's motion for summary judgment should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for summary judgment (ECF No. 96).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 9, 2021

_____
William G. Cobb
United States Magistrate Judge